I respectfully dissent from the majority opinion concerning its analysis and resolution of the third assignment of error, specifically their interpretation of the evidence presented in this case. As appellee indicated, the two doctors who testified did not agree that appellant's injury was attributable to the automobile accident in question. The doctor for the insurance company stated that he found no objective evidence of any physical injury attributable to the claimed accident in his examination and review of appellant's other medical records. Rather, he found that appellant had preexisting arthritis in her neck and that it was this arthritis which caused a preexisting disk desiccation and herniation.
Appellant and the majority rely on the statement by the defense physician that some injury probably resulted from the claimed accident. However, that doctor was empathic in his testimony that the long term pain, suffering and treatment experienced by appellant would have been unrelated to any injuries suffered in that accident. When questioned as to the diagnoses of the other doctors whose records he examined, he pointed out that:
 "A. Well, all of them basically make the diagnosis of a sprain or a strain that would have occurred at the time of the injury. I would tend to depart with them with the various diagnoses, such as headache, numbness and tingling, because those aren't diagnoses, those are simply descriptions of symptoms. I would also depart with them on the diagnosis of thoracic outlet syndrome. There's no evidence that she ever had that, and I would depart with them when they give the opinion that these disk herniations are somehow related to the motor vehicle accident, because I don't believe that there's any evidence that that's the case."
 "Q. All right. And you would also depart with them, I take it, on the duration of any injury that she had which came from the automobile accident?
"A. That's correct.
 "Q. As far as you are concerned, whatever happened in the automobile accident was in all probability and based on reasonable medical certainty, over in a couple of months?
"MR. REID: Objection.
 "A. The car accident would have caused a minor soft tissue injury of her neck, which is a sprain or a strain, and I would agree with the ideas that in a couple of months she should have been better from that.
 "Q. Would there by any permanency or any weakness associated with that injury?
"A. No
"MR. BOLTON: All right. Thank you, Doctor."
The fact of the matter is that the diagnosis of each doctor who treated appellant was based on her stated history of the auto accident at issue.
It is certainly within the jury's province to ascertain the weight to be given a physician's opinion as to the proximate cause
of medical trauma symptoms. It is axiomatic that a physician will seldom have personal knowledge of the trauma which induced the symptoms. That knowledge can only be surmised from the patient's stated medical history and subjective complaints. As a result, it is unlikely that any doctor could offer testimony as to proximate cause except in a general fashion; i.e., the doctor could indicate that the injury was consistent or inconsistent with the claimed traumatic event related by the patient.
In the instant case, appellee's physician testified in detail to his belief that a major discrepancy existed between the severity and extent of the accident and the degree and duration of injury later claimed by appellant. His opinion that a discrepancy existed put the issue of proximate cause directly within the jury's realm of consideration. In response, they apparently felt that the injuries for which appellant sought compensation were not consistent with and were not proximately caused by the accident at issue.
I, therefore, respectfully dissent from the majority's opinion and would affirm this judgment.
 __________________________ JUDITH A. CHRISTLEY, JUDGE